## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAYMOND GASTON** | : | |
| **POWELL, III,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-348** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **MAIL INSPECTOR CHARLES** | : | |
| **MCKEOWN,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

This matter is before the Court pursuant to Defendants' motion to dismiss (Doc. No. 13) and *pro se* Plaintiff Raymond Gaston Powell, III ("Plaintiff")'s motion for a continuance (Doc. No. 20). The motions are fully briefed and ripe for disposition.

## I.   BACKGROUND

Plaintiff, who is currently incarcerated at the State Correctional Institution in Coal Township, Pennsylvania ("SCI Coal Township"), initiated the above-captioned action on January 13, 2020 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Charles McKeown ("McKeown"), Lieutenant Gardzalla ("Gardzalla"), Superintendent Mahally ("Mahally"), and Zachary Moslak ("Moslak") in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 2.) In an Order dated February 24, 2020, that court transferred the matter to this Court for further proceedings. (Doc. No. 5.)

Plaintiff's complaint concerns events that occurred while he was incarcerated at SCI Dallas. (Doc. No. 2 at 4.) Plaintiff alleges that on January 9, 2019, he received a notice of confinement report and was taken to the Restricted Housing Unit ("RHU"). (*Id.* at 15, 35.) On January 10, 2019, Plaintiff received a misconduct in which Defendant Gardzalla charged him with assaulting another inmate. (*Id.* at 15, 36.) Plaintiff completed an inmate version of events, arguing that he had not assaulted another inmate and that he was "singled out by a rumor, or hearsay." (*Id.* at 15, 37.)

Plaintiff appeared before Defendant McKeown for a disciplinary hearing on January 14, 2019. (*Id.* at 15, 38.) During the hearing, Plaintiff presented "his version that he did not do this, and that he was confined to his living quarters where movement between dorms at night is prohibited." (*Id.* at 15.) Plaintiff also argued that he "lives downstairs and the assault victim lives [u]pstairs where movement from upstairs to downstairs is especially prohibited." (*Id.*) Plaintiff presented testimony from inmate Victor Brown. (*Id.*) Plaintiff alleges that after inmate Brown testified, Defendant McKeown called Defendant Gardzalla and informed him of inmate Brown's testimony. (*Id.*) Defendant Gardzalla went to inmate Brown's housing unit, handcuffed him, and took him to security. (*Id.*) Plaintiff maintains

that Defendant Gardzalla threatened inmate Brown with being Plaintiff's accomplice. (*Id.* at 15-16.)

Plaintiff's disciplinary hearing was continued to January 17, 2019. (*Id.* at 16.) According to Plaintiff, Defendant Gardzalla appeared and "presented the unsworn testimony he had taken under [d]uress from inmate Brown and used it to impeach Plaintiff['s] witness at the hearing." (*Id.*) Defendant McKeown found Plaintiff guilty of the charge. (*Id.* at 16, 42.) Plaintiff maintains that he was found guilty "where the only evidence against him in support of the [c]harge was [a] third[-]party hearsay statement by [Defendant] Gardzalla." (*Id.* at 16.) He appealed to the Program Review Committee ("PRC"), which denied his appeal. (*Id.* at 46.) Plaintiff then appealed to Defendant Mahally, who denied his second level appeal. (*Id.* at 30.) Plaintiff then submitted a final appeal to Defendant Moslak, the Chief Hearing Examiner for the Department of Corrections ("DOC"). (Doc. No. 2-1.) On March 12, 2019, Defendant Moslak dismissed Plaintiff's appeal, noting that his twenty (20)-page appeal failed to meet criteria that appeals include a brief statement of the relevant facts. (Doc. No. 2 at 28.) Plaintiff asked for reconsideration, noting that his appeal totaled twenty (20) pages because it included the requisite documentation from the misconduct proceedings and lower appeals. (*Id.* at 27.) Plaintiff alleges that afterwards, Defendant Gardzalla ordered his television, typewriter, and

commissary destroyed.  (*Id.* at 17.)  Plaintiff maintains that his commissary totaled

$104.00 but that he was only reimbursed $86.00 after his family called to complain.

(*Id.*)  Plaintiff further alleges that when he "began to suffer severe anxiety [a]nd

[d]epression while in the [RHU], they transferred [him] so that he [c]ould not

continue his process for relief."  (*Id.*)  He asserts that he "has been moved further

from his home where he had once received visits on [a] monthy basis, and now can

see his family only a few times a year."  (*Id.* at 18.)  Plaintiff also maintains that he

is now at a "[m]ore strict and confined institution."  (*Id.*)

Based on the foregoing, Plaintiff alleges that his First Amendment rights were

violated when Defendant Gardzalla retaliated against him for using the grievance

process by destroying his television, typewriter and commissary.  (*Id.* at 14.)

Plaintiff suggests further that his due process rights under the Fourteenth

Amendment were violated during misconduct proceedings. (*Id.* at 12-13.)  Finally,

Plaintiff suggests that his Eighth Amendment right to be free from cruel and unusual

punishment was violated.  (*Id.* at 19.)  Plaintiff seeks injunctive relief as well as

damages.  (*Id.*)

In an Order dated February 28, 2020, the Court granted Plaintiff leave to

proceed *in forma pauperis* and directed service of his complaint upon Defendants.

(Doc. No. 9.)  Defendants filed their motion to dismiss on April 28, 2020 (Doc. No.

13) and their brief in support thereof on May 11, 2020 (Doc. No. 14).  On May 12, 2020, observing that Defendants raised the issue of whether Plaintiff properly exhausted his administrative remedies with respect to his claims in accordance with the Prison Litigation Reform Act ("PLRA"), the Court issued a *Paladino* Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and, by doing so, would consider matters outside the pleadings in its role as factfinder.[1]  (Doc. No. 15.)  The Court directed Defendants to amend or supplement their motion to dismiss to address the issue of administrative exhaustion and to include a statement of material facts in accord with Local Rule 56.1 within twenty-one (21) days.  (*Id.*)  The Court further directed that Plaintiff respond to Defendants' supplemental materials within twenty-one (21) days of their filing date. (*Id.*)

Plaintiff filed a brief in opposition on May 29, 2020.  (Doc. No. 16.)  On June 2, 2020, Defendants filed their brief regarding exhaustion and their statement of facts. (Doc. Nos. 18, 19.)  On June 2, 2020, Plaintiff filed a motion for a continuance pursuant to Rule 56(f) of the Federal Rules of Civil Procedure (Doc. No. 20) and his brief in opposition to Defendants' supplemental brief (Doc. No. 21).  On July 6, 2020, Plaintiff filed his responsive statement of facts.  (Doc. No. 22.)  Defendants

---

[1] *See Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018).

have filed neither a reply brief nor a response to the motion for a continuance. Accordingly, because the time period for doing so has expired, the motions are ripe for disposition.

## II.    MOTION FOR CONTINUANCE

Plaintiff has filed a motion for a continuance pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, asserting that he cannot properly present his case because of movement restrictions imposed as a result of the COVID-19 pandemic. (Doc. No. 20 at 1-3.)  As an initial matter, it appears that Plaintiff means to reference Rule 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  *See* Fed. R. Civ. P. 56(d).  In an attached affidavit, Plaintiff asserts that Defendants filed their motion to dismiss before discovery "was had in this case" and that he intends to obtain affidavits to indicate how his due process and Eighth Amendment rights were violated.  (Doc. No. 20 at 5.)

In this Court, "[i]n the absence of a discovery deadline set forth in a court order, each party to a civil action shall complete all discovery proceedings within six (6) months of the date of the last pleading filed by that party."  M.D. Pa. L.R.

26.4.  "Pleading" has "the same meaning in this rule as in Fed. R. Civ. P. 7(a)."  *Id.*

Under that rule, a motion to dismiss is not a pleading.  *See* Fed. R. Civ. P. 7(a); *see*

*also United States v. Snyder*, No. 06-cv-141, 2007 WL 1029781, at *2 (W.D. Pa.

Apr. 2, 2007).  Thus, because Defendants have not yet filed a pleading in this matter,

discovery has not commenced.  Moreover, as noted above, the Court indicated that

it would consider only the issue of exhaustion, not the merits of Plaintiff's claims,

in the context of summary judgment.  (Doc. No. 15.)  Plaintiff has responded to

Defendants' exhaustion argument with a brief, statement of facts, and exhibits.

(Doc. Nos. 21, 22.)  The Court, therefore, concludes that a continuance under Rule

56(f) is unnecessary.  Accordingly, Plaintiff's motion for such (Doc. No. 20) will be

denied.

## III.    STANDARDS OF REVIEW

### A.    Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must

accept as true all factual allegations in the complaint and all reasonable inferences

that can be drawn from them, viewed in the light most favorable to the plaintiff.  *See*

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  The Court's

inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Under *Twombly* and *Iqbal*,

pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt

9

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## B.      Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963

F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*,

826 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id.* (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at \*5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at \*4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## IV.   STATEMENT OF MATERIAL FACTS[2]

Plaintiff was provided an Inmate Handbook upon his incarceration with the Department of Corrections ("DOC").   (Doc. No. 18 ¶ 12.)   He "had the inmate handbook in his physical possession at the time of the misconduct and subsequent appeals."   (*Id.* ¶ 14.)   During his current period of incarceration, Plaintiff has been issued eight (8) misconducts.   (*Id.* ¶ 15.)

### A.   Placement in Administrative Custody

Plaintiff was incarcerated at SCI Dallas from December 19, 2017 until April 9, 2019.   (*Id.* ¶ 16.)   On January 9, 2019, a correctional officer "prepared a DC-141 Report (No. B136020) which provided 'notification of confinement' to Plaintiff that he was being placed into administrative custody ('AC') in accordance with DC-

---

[2] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."   M.D. Pa. L.R. 56. 1.   The Rule further requires the inclusion of references to the parts of the record that support the statements.   *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.   *See id.*   Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts.   (Doc. No. 18.)   Plaintiff did not comply with Local Rule 56.1 in that he failed to respond specifically to the numbered paragraphs in Defendants' statement of material facts.   Rather, Plaintiff filed his own statement of material facts without regard to that of the Defendants.   (Doc. No. 22.)   Accordingly, unless otherwise noted, the Court deems the facts set forth by the Defendants to be undisputed.   *See* M.D. Pa. L.R. 56. 1; Fed. R. Civ. P. 56(e)(2); *Bowman v. Mazur*, Civ. No. 08-173J, 2010 WL 2606291, at *3 (W.D. Pa. Oct. 30, 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply with Local Rule 56.1.").

ADM 802, § I(B)(f)." (*Id.* ¶ 18.)  The report was reviewed, approved, and signed by the shift commander and personally served upon Plaintiff.  (*Id.* ¶¶ 19-20.)  On January 10, 2019, the PRC reviewed Plaintiff's AC status.  (*Id.* ¶ 21.)  On January 14, 2019, the PCR "issued a written decision indicating that Plaintiff was to '[c]ontinue AC Status pending Security report.'"  (*Id.* ¶ 22.)  Plaintiff did not appeal from that decision.  (*Id.* ¶ 23.)

### B.    Disciplinary Proceedings

On January 10, 2019, Defendant Gardzalla issued a report charging Plaintiff with a Class 1 misconduct for an assault that allegedly occurred on January 5, 2019 by completing Misconduct Report No. B352407.  (*Id.* ¶ 25.)  The report stated: "On 01/05/2019 inmate Powell SX2600 did assault another inmate on O Block.  The injuries required medical attention.  Inmate Powell was positively identified by CSI #18DAL108."  (*Id.*)  That same day, the shift commander reviewed and approved the report and it was personally served upon Plaintiff.  (*Id.* ¶¶ 26-27.)

Plaintiff was also served with the DC-141, Part 2(A), "Inmate Request for Representation and Witnesses," and DC-141, Part 2(C), Hearing Supplement, Inmate Statement, and Witness Statement Form.  (*Id.* ¶ 28.)  He requested assistance from Morris Spence and for the three (3) witnesses to appear.  (*Id.* ¶ 29.)  Plaintiff's request to have inmate Victor Brown as a witness was granted; his requests for

Corrections Officers Lecco and Sanger to be witnesses were denied "on grounds of relevance because the hearing examiner concluded the testimony was unnecessary to establish the guilt[] or innocence of the inmate." (*Id.*)  Plaintiff also completed the Hearing Supplement, Inmate Version, and Witness Statement Form.  (*Id.* ¶ 30.) Plaintiff also completed the DC-141, Part 2(D), "Waiver of Disciplinary Procedures," "indicating that he wished to have a disciplinary hearing, but voluntarily waived his right to have the hearing within six days of receiving notice of the charge." (*Id.* ¶ 31.)

Defendant McKeown conducted Plaintiff's disciplinary hearing on January 14, 2019. (*Id.* ¶ 32.)  The hearing "began with *in camera* testimony from [Defendant] Gardzalla for the purpose of determin[ing] the reliability of a confidential source of information and a review of the victim's medical incident report." (*Id.*)  Defendant McKeown then advised Plaintiff "of the facts gathered from the *in camera* portion of the disciplinary hearing." (*Id.*)  Plaintiff testified and submitted his written version, and inmate Victor Brown testified.  (*Id.*)  At the conclusion of inmate Brown's testimony, Defendant McKeown "continued the disciplinary hearing proceedings." (*Id.*)

Defendant McKeown resumed the disciplinary hearing on January 17, 2019, at which time Defendant Gardzalla testified and presented telephone records and

Plaintiff again testified.  (*Id.* ¶ 33.)  At the conclusion, Defendant McKeown made findings of fact, stating:

> I believe that on 01/[]5/19 at approximately 2200 hrs. CSI #18DAL108 observed I/m Powell strike /m O'Connor with a closed fist and then strike O'Connor with an edged weapon causing the injuries documented on the DC-457 and Page 2 of this 2.B.  The slashes and stab wounds are consistent with an edged weapon attach and not a fall as alleged by I/m Powell in his testimony.  I therefore find a preponderance of evidence that Powell assaulted O'Connor.

(*Id.* ¶ 34.)  Defendant McKeown "also returned a guilty verdict."  (*Id.* ¶ 35.)

On January 17, 2019, Plaintiff prepared a DC-141, Part 2(E), "Misconduct Hearing Appeal," identifying "as areas of appeal that (a) the procedures employed were contrary to law, Department directives, or regulations, and that (c) the findings of fact were insufficient to support the decision."  (*Id.* ¶ 36.)  Plaintiff's appeal "concerned a 'defective' 'Waiver of Disciplinary Procedures Form' which lacked a proper misconduct report number."  (*Id.*)  Plaintiff argued "that the seven (7) day time limitation for a hearing on the proper misconduct report (#B352407) expired."  (*Id.*)  The appeal referenced the hearing examiner and did not identify Defendants Gardzalla, Mahally, or Moslak by name or position.  (*Id.*)  The appeal "did not seek money damages, identify any claims for cruel and unusual punishment, complain of retaliation, or identify any deprivation of a T.V., [t]ypewriter, or [c]ommisary."  (*Id.*)

16

On January 24, 2019, the PRC "issued a written decision which denied Plaintiff's misconduct appeal and upheld the hearing examiner's verdict." (*Id.* ¶ 38.)

On January 31, 2019, Plaintiff prepared a second DC-141, Part 2(E), "Misconduct Hearing Appeal." (*Id.* ¶ 39.) He argued that: (1) there had been no statement of past reliability with respect to the confidential informant; (2) Defendant Gardzalla's "testimony required [him] to prove a negative"; (3) a challenge related to the timeline and procedural history of the misconduct and hearing was meritorious; and (3) Defendant McKeown's determination with respect to the reliability of the confidential informant's information was not credible. (*Id.*) This appeal identified the hearing examiner and identified Defendant Gardzalla by name but did not identify Defendants Mahally and Moslak by name or position. (*Id.*) The appeal "did not seek money damages, identify any claims for cruel and unusual punishment, complain of retaliation, or identify any deprivation of a T.V., [t]ypewriter, or [c]ommisary." (*Id.*)

This appeal was forwarded to Defendant Mahally on February 6, 2019. (*Id.* ¶ 40.) Defendant Mahally "reviewed the original misconduct, the documentation attached to Plaintiff's appeal, the Hearing Examiner's findings, Plaintiff's appeal to the [PRC], and the [PRC's] response." (*Id.* ¶ 41.) On February 13, 2019, Defendant Mahally denied Plaintiff's appeal. (*Id.* ¶ 42.) Defendant Mahally noted that Plaintiff

was presenting his case again and that "[n]either PRC nor this second level appeal is a re-hearing of your misconduct." (*Id.*)

On March 8, 2019, Plaintiff appealed Defendant Mahally's decision to Defendant Moslak, the Chief Hearing Examiner. (*Id.* ¶ 43.) Plaintiff's final appeal consisted of a "twenty (20) page filing which included, *inter alia*, a seven (7) page narrative." (*Id.*)   In the narrative, Plaintiff stated that: (1) Defendant Mahally "mistakenly believed that Plaintiff was trying to present his case again"; (2) Defendant Mahally "mistakenly believed that the hearing examiner was to determine guilt based on the information available at the time of the hearing"; (3) Defendant Mahally "mistakenly believed that the hearing examiner relied upon a CSI when determining guilt or innocence"; and (4) Defendant Mahally "mistakenly believed that the appeal process required the presentation of new information or evidence to alter the hearing examiner's decision." (*Id.*)

On March 12, 2019, Defendant Moslak issued a written decision dismissing Plaintiff's appeal, stating:

> Pursuant to DC-ADM 801 § 5 (C.4), appeals shall include a <u>brief</u> statement of the facts relevant to the claim.  Your twenty (20) page appeal clearly fails to meet this criterion and will not be accepted for Final Review.  You may, within seven (7) days of receipt of this letter, resubmit an appeal to Final Review with a <u>brief</u> statement of the facts <u>relevant</u> to your claim.

(*Id.* ¶ 44.)  On March 13, 2019, Plaintiff responded, asking that Defendant Moslak review his appeal because his "actual appeal is brief, not exceeding (3) papers.  The rest is objections, rebuttal, and the 'proper appeal paperwork.'"  (*Id.* ¶ 45.) Defendant Moslak received Plaintiff's letter on March 25, 2019.  (*Id.* ¶ 46.)  In a response dated March 28, 2019, Defendant Moslak indicated that Plaintiff's letter "was being filed without action." (*Id.* ¶ 47.)  Defendant Moslak stated that Plaintiff had "failed to utilize the correct DC-141, Part 2 (E) form." (*Id.*)  He also noted that Plaintiff was responsible for providing photocopies of the: (1) misconduct report and hearing examiner's report; (2) inmate version and witness forms; (3) written appeal to and response from the PRC; and (4) written appeal to and response from the Superintendent.  (*Id.*)  Plaintiff "was also afforded seven calendar days to re-submit the appeal."  (*Id.*)

On March 29, 2019, Plaintiff submitted another letter asking that Defendant Moslak review the appeal previously submitted.  (*Id.* ¶ 49.)  "Plaintiff did not submit the DC-141, Part 2 (E) form with his two (2) page letter, but instead argued that the handbook did not require that a final level of appeal be written on a DC-141, Part 2 (E) form."  (*Id.*)  Defendant Moslak received Plaintiff's letter on April 4, 2019.  (*Id.* ¶ 50.)  On April 11, 2019, Defendant Moslak issued a written response explaining that Plaintiff's letter "was being filed without action for the same reasons expressed

in the March 28, 2019 letter." (*Id.* ¶ 51.)  Plaintiff "was also afforded seven calendar days to re-submit the appeal in a manner consistent with DC-ADM 801." (*Id.* ¶ 52.) "Plaintiff never responded to the Chief Hearing Examiner's April 11, 2019 correspondence." (*Id.* ¶ 53.)

### C.   Plaintiff's Grievances

On March 14, 2019, Plaintiff submitted a grievance "complaining of a due process violation that was alleged to have occurred during Plaintiff's misconduct hearing and appeal therefrom." (*Id.* ¶ 55.)  The grievance "did not identify [Defendants] Moslak or Mahally by name but did identify the 'chief hearing examiner' and 'facility manager.'" (*Id.*)  The grievance was assigned grievance number 791521. (*Id.* ¶ 56.)  On March 14, 2019, Plaintiff's grievance was rejected "on the basis that 'grievances related to the DC-ADM 801 Inmate/Discipline/Misconduct Procedures are not to be handled by the inmate grievance procedures or reviewed by the facility grievance coordinator." (*Id.* ¶ 57.)

Plaintiff received the denial of his grievance that same day. (*Id.* ¶ 58.)  He submitted an appeal to the Facility Manager that same day, complaining "about his placement in administrative custody, his receipt of the misconduct, and the hearing examiner's finding of guilt on that misconduct." (*Id.* ¶ 59.)  Plaintiff never submitted

his appeal to the Facility Manager and "never filed any appeal with the Secretary's Office of Inmate Grievances and Appeals." (*Id.* ¶¶ 60-61.)

On June 4, 2019, Plaintiff wrote an official inmate grievance "complaining of a deprivation of property from his commissary account." (*Id.* ¶ 62.) The grievance was assigned grievance number 806095. (*Id.* ¶ 63.) On June 10, 2019, the grievance was rejected "on the basis that '[t]he grievance was not submitted within fifteen (15) working days after the events upon which the claims are based.'" (*Id.* ¶ 64.) Plaintiff received the denial of his grievance. (*Id.* ¶ 65.) Plaintiff never appealed to the Facility Manager and "never filed any appeal with the Secretary's Office of Inmate Grievances and Appeals." (*Id.* ¶¶ 66-67.)

## V.    DISCUSSION

### A.    Plausibility of Plaintiff's Eighth Amendment Claim

Plaintiff vaguely suggests that Defendants' actions violated his right, under the Eighth Amendment, to be free from cruel and unusual punishment. (Doc. No. 2 at 3, 19.) There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; and the use of excessive force by prison guards. An Eighth Amendment claim includes both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is

21

required to satisfy the Eighth Amendment's objective component.  *See id.*  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."  *See id.*

    In the instant case, the Court agrees with Defendants that Plaintiff's complaint, as pled, fails to set forth a plausible Eighth Amendment claim.  (Doc. No. 14 at 8-9.)  It appears that Plaintiff bases his Eighth Amendment claim upon his placement in the RHU.  Placement in the RHU, however, without allegations concerning the denial of any of life's necessities, is insufficient to state an Eighth Amendment violation.  *See Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014); *see also Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1991) (noting that placing an inmate in restricted housing does not violate the Eighth Amendment "as long as the conditions of confinement are not foul, inhuman or totally without penological justification"); *cf. Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (noting that the "minimal civilized measure of life's necessities" includes food, water, and shelter).  Likewise, the deprivation of property is insufficient to maintain an Eighth Amendment claim.  *See Young v. Edward*, No. 17-cv-1736, 2018 WL 4616245, at *3 (M.D. Pa. Sept. 26, 2018).  The Court, therefore, will grant Defendants' motion to dismiss (Doc. No. 13) with respect to Plaintiff's Eighth Amendment claims.

### B.     Plausibility of Plaintiff's First Amendment Claim

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.

1997).  The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.  "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422.  If the prison officials can make this showing, it defeats the retaliation claim.  *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

In the instant case, Plaintiff suggests that Defendant Gardzalla retaliated against him for using the grievance procedures by directing that his television, typewriter, and commissary be destroyed.  (Doc. No. 2 at 14, 17.)  Plaintiff also suggests that he retaliated against for using the grievance system by being transferred to a "[m]ore strict and confined institution" farther from his family.  (*Id.* at 14, 17-18.)  Defendants concede that the filing of grievances constitutes protected activity.  (Doc. No. 14 at 9 n.3); *see Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011).

Defendants instead argue that Plaintiff's "complaint fails to provide sufficient factual matter to satisfy the second or third prongs." (Doc. No. 14 at 10.)

To be actionable under § 1983, the adverse action "need not be great" but "must be more than *de minimus*." *See McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). The Third Circuit has noted that allegations of destruction of property can be a sufficient adverse action for purposes of the second prong. *See Mincy v. Chmielsewski*, 508 F. App'x 99, 104-05 (3d Cir. 2013.) Moreover, "under some circumstances, a prison transfer may constitute an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Chruby v. Bearjar*, No. 3:17-cv-1631, 2018 WL 4537404, at *12 (M.D. Pa. Aug. 27, 2018), *Report and Recommendation adopted*, 2018 WL 4507599 (M.D. Pa. Sept. 19, 2018).

At this stage, the Court concludes that Plaintiff has sufficiently set forth First Amendment retaliation claims against Defendants. In their brief, Defendants suggest that Plaintiff's allegations are contradicted by "indisputably authentic records." (Doc. No. 14 at 11, 12.) For example, Defendants seek to rely upon a copy of Plaintiff's cell history, grievance number 806095, and an inventory sheet dated April 10, 2019 to contradict Plaintiff's allegations regarding the destruction of property. (*Id.* at 11.) They also seek to reply upon a copy of Plaintiff's misconduct history; a copy of Plaintiff's grievance history; the relative distances between

25

Plaintiff's home address in Plymouth, Pennsylvania to SCI Dallas and SCI Coal Township, respectively; and a facility transfer petition to contradict Plaintiff's allegations that the new facility was stricter and that he was unable to receive visitors as frequently as he was able to at SCI Dallas. (*Id.* at 13.) The Court concludes that, at this stage, it would be improper to grant Defendants' motion to dismiss with respect to Plaintiff's First Amendment retaliation claims based upon Defendants' reliance on these documents. *See Washington v. Link*, 750 F. App'x 84, 87-88 (3d Cir. 2018) (noting that the district court erred by considering documents that were "not indisputably authentic for Rule 12(b)(6) purposes"). Accordingly, the Court will deny Defendants' motion to dismiss (Doc. No. 13) with respect to their argument that Plaintiff has not set forth plausible First Amendment retaliation claims.[3]

### C.   Plausibility of Plaintiff's Fourteenth Amendment Due Process Claims

Plaintiff alleges that his Fourteenth Amendment due process rights were violated in various ways during his misconduct proceedings. Specifically, he asserts that his rights were violated because: (1) there was no written statement by the confidential informant, Defendant Gardzalla did not indicate that the information

---

[3] Defendants argue further that Plaintiff failed to exhaust his administrative remedies with respect to his retaliation claims. The Court considers that argument *infra* in Part V.D.

had provided reliable information in the past, and Defendant McKeown was unable to make an independent determination of the informant's reliability; (2) his right to present witnesses and a defense was violated because Defendant Gardzalla took an unsworn statement from inmate Brown that was later used to impeach his testimony; (3) Defendant McKeown relied solely upon hearsay; (4) Defendant McKeown failed to call the victim or sufficiently investigate if Plaintiff was the perpetrator; (5) there was no camera recording, no statement by the informant, and the informant was not presented *in camera*; and (6) Defendant Moslak thwarted final review of Plaintiff's appeal of the misconduct. (Doc. No. 2 at 12-13.)

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As a threshold, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Att'y Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)). These protections attach in prison disciplinary proceedings in which the loss of good-time credits is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974). When this protected liberty interest is at stake, due process mandates that prisoners receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety

and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). Moreover, if there is "some evidence" to support the decision of the hearing examiner, the Court must reject any evidentiary challenges by the plaintiff. *See id.* at 457. The *Hill* standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. *See Thompson v. Owens*, 889 F.2d 500, 501-02 (3d Cir. 1989).

In his complaint, Plaintiff suggests that he was "deprived of any pre-release [a]nd good time due to [the] disciplinary infraction related to this misconduct." (Doc. No. 2 at 18.) Thus, accepting Plaintiff's allegations as true, the Court concludes that Plaintiff has identified a protected liberty interest such that *Wolff* applies.[4] The exhibits attached to Plaintiff's complaint indicate that he received

---

[4] Plaintiff also alleges that: (1) he was confined in the RHU prior to his hearing; (2) there was a reckless investigation into the misconduct; (3) his security level status changed from Level 2 to 5; and (4) he was transferred to another institution. These claims, however, do not implicate due process protections. *See, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (noting that inmates do not have a protected liberty interest to be assigned to a particular custody level or security classification); *Sandin v. Conner*, 515 U.S. 472, 486 (1995) (confinement in administrative or punitive segregation is insufficient, without more, to establish an "atypical" deprivation necessary to implicate a liberty interest); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (noting that "an inmate does not have a due process right to remain at, or be transferred to, a prison of his choice"); *Johnson v. Logan*, 721 F. App'x 205, 208 n.9 (3d Cir. 2018) (expressing

notice of the misconduct on January 10, 2019, a few days prior to his disciplinary hearing. (Doc. No. 2 at 36.) He presented testimony from inmate Brown during his hearing. (*Id.* at 38-42.) Moreover, Defendant McKeown issued a written statement regarding the evidence relied on and the reasons for the disciplinary action. (*Id.*)

As noted above, Plaintiff suggests that his due process rights were violated because Defendant McKeown "relied solely on [Defendant] Garzalla's assessment of an unnamed [i]nformant hearsay account." (Doc. No. 2 at 12.) Hearsay, however, is permitted in prison disciplinary proceedings. *See Griffin v. Spratt*, 969 F.2d 16, 22 (3d Cir. 1992). Plaintiff also suggests that his due process rights were violated because the record does not contain a written statement from the informant and because Defendant Gardzalla did not allege that the informant has provided reliable evidence in the past. (Doc. No. 2 at 12.) When a disciplinary decision relies upon statements from confidential informants, the Third Circuit has noted that due process requires the following:

> "(1) the record must contain some underlying factual information from which the (tribunal) can reasonably conclude that the informant was credible or his information reliable; [and] (2) the record must contain the informant's statement (written or as reported) in language that is factual rather than conclusory and must establish by its specificity that the informant spoke with personal knowledge of the matters contained in such statement."

---

"significant doubts about whether there is an independent substantive due process right to be free from a reckless investigation").

*Helms v. Hewitt*, 655 F.2d 487, 502 (3d Cir. 1981) (quoting *Gomes v. Travisono*, 510 F.2d 537, 540 (1st Cir. 1974)), *rev'd on other grounds*, *Hewitt v. Helms*, 459 U.S. 460 (1983). The record contains both the evidence presented during the hearing and the investigative report. *Henderson v. Carlson*, 812 F.2d 874, 879 (3d Cir. 1987). However, a "prison disciplinary committee need not reveal at a disciplinary hearing evidence bearing on the reliability of confidential informants if prison officials believe that such evidence is capable of revealing the identity of the informants and if the evidence is made available to the court for *in camera* review." *Id.* at 880.

Defendant McKeown's written decision states:

On 01/14/19, at 1005 hrs, an *in camera* hearing was conducted with Lt. Gardzalla to determine the reliability of a confidential source of information used in the hearing. It was done so *in camera* as the lieutenant's testimony in and of itself could inadvertently reveal the identity of the confidential source of information/confidential human source, thus warranting the security precaution.

Lt. Gardzalla testified under oath as to how the CSI was in the position to have first hand knowledge of the incident as well as how the CSI['s] statement was corroborated. Based upon the lieutenant's testimony, I do find that the CSI does meet the criteria set forth in DC-ADM 801 to be deemed reliable.

The CSI stated that he observed I/m Powell "laying in wait." When I/m O'Connor arrived, I/m Powell attacked MY9128 by striking O'Connor in the head with a closed fist and then striking I/m O'Conner several more times with an edged weapon.

(Doc. No. 2 at 38.)  At this stage, the Court concludes that Plaintiff has set forth a plausible due process claim regarding the use of a confidential information during his disciplinary proceeding.  The record before the Court is devoid of the informant's statement, and Defendant McKeown's written statement does not provide any specifics regarding Defendant Gardzalla's testimony about corroboration and credibility of the informant's statement.  Without such information, the Court cannot, at this time, conclude that Plaintiff's due process rights were not violated. Accordingly, the Court will deny Defendants' motion to dismiss (Doc. No. 13) with respect to the argument that Plaintiff has not set forth a plausible Fourteenth Amendment due process claim with respect to Defendants Gardzalla and McKeown.

Defendants also contend that Defendants Mahally and Moslak were not personally involved in the alleged due process violation and that their failure to respond favorably to Plaintiff's appeals from the disciplinary proceedings is insufficient to hold them liable under § 1983.  (Doc. No. 14 at 16-17.)  The Court agrees with Defendants.  Inmates do not have a constitutional right to prison grievance procedures.  *See Lions v. Wetzel*, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015).  The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any

underlying constitutional deprivation. *See Pressley v. Beard*, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); *Ramos v. Pa. Dep't of Corr.*, No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials

failed to respond to the inmate plaintiff's grievance does not state a constitutional claim), *aff'd*, 142 F.3d 430 (3d Cir. 1998).

Consequently, any claims asserted by Plaintiff in an attempt to establish liability against Defendants Mahally and Moslak based solely upon the substance of their respective responses, or lack thereof, to his grievances or administrative remedies does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for liability); *see also Brooks*, 167 F. App'x at 925; *Ramos*, 2006 WL 2129148, at *3. Accordingly, the Court will grant Defendants' motion to dismiss (Doc. No. 13) with respect to Plaintiff's due process claims against Defendants Mahally and Moslak.

### D.    Administrative Exhaustion

As noted *supra*, Defendants also maintain that Plaintiff failed to exhaust his administrative remedies with respect to his claims prior to initiating the above-captioned case. (Doc. No. 17.) Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through

administrative avenues.").  Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  *See* 42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement.  *See Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000).  Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court.  *See id.*  Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court.  *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal

court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. *See, e.g., Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *See Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," *see Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *See Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, may not

excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *See Harris*, 149 F. App'x at 59. Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *See Warman*, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. *See Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *See id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *See id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable

of use." *See id.*   Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." *See id.* at 1860.   However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).   The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

*Hardy v. Shaikh*, 959 F.3d 578, 588 (3d Cir. 2020).

The DOC "has three (3) different administrative remedy processes which collectively provide an inmate a route to challenge every aspect of confinement."[5] *Shade v. Pa. Dep't of Corr.*, No. 3:16-cv-1635, 2020 WL 1891856, at *3 (M.D. Pa. Apr. 16, 2020).   One administrative remedy may not be substituted for the other. *See id.*   Under DC-ADM 804, "[a]n inmate who has been personally affected by a Department and/or facility action or policy will be permitted to submit a grievance."

---

[5] Defendants have submitted copies of all three (3) policies to support their administrative exhaustion arguments.

(Doc. No. 18, Ex. E.)   Under the policy, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review.  (*Id.*)  This grievance must be submitted within fifteen (15) days of the events upon which the inmate's grievance is based.  (*Id.*)  Within fifteen (15) days of an adverse decision by the Grievance Coordinator, the inmate may appeal to the Facility Manager.  (*Id.*)  Subsequently, the inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals within fifteen (15) days of an adverse decision by the Facility Manager.  (*Id.*)  An inmate must exhaust all three (3) levels and comply with all procedural requirements to fully exhaust an issue.  (*Id.*)  Moreover, DC-804 specifically states:

> Issues concerning a specific inmate misconduct charge, conduct of hearing, statements written within a misconduct and/or other report, a specific disciplinary sanction, and/or the reasons for placement in administrative custody will not be addressed through the Inmate Grievance System and must be addressed through Department policy DC-ADM 801, "Inmate Discipline" and/or DC-ADM 802, "Administrative Custody Procedures."  Issues other than specified above must be addressed through the Inmate Grievance System.

(*Id.* (emphasis omitted).)

DC-801 sets forth procedures regarding inmate discipline and misconduct hearings.  (Doc. No. 18, Ex. D.)   Under this policy, an inmate found guilty of disciplinary charges may appeal the hearing examiner's decision to the PRC, the Facility Manager, and, finally, the Chief Hearing Examiner.  (*Id.*)  Of relevance here,

the final appeal to the Chief Hearing Examiner must include "photocopies of the Misconduct Report, Hearing Examiner's Report, the Inmate Version and Witness forms, Appeal to the PRC, the PRC's Response, Appeal to the Facility Manager, and the Facility Manager/designee's response." (*Id.*)  Moreover, the final appeal must include "a brief statement of the facts relevant to the appeal and issues complained of on appeal by using the DC-141, Part 2(E)." (*Id.*)

DC-802 sets forth procedures regarding an inmate's placement in administrative custody. (Doc. No. 18, Ex. B.)  An inmate seeking to appeal a decision of the PRC regarding confinement in administrative custody must do so within two (2) work days of the completion of the hearing by filing an appeal to the Facility Manager. (*Id.*)  The Facility Manager then has ten (10) days to provide a decision to the inmate. (*Id.*)  From there, an inmate may appeal the Facility Manager's decision to the Chief Hearing Examiner within seven (7) days of the receipt of the Facility Manager's decision. (*Id.*)

### 1.    Eighth Amendment Claim

As noted *supra*, the Court has construed Plaintiff's complaint as raising an Eighth Amendment claim based upon his placement in administrative custody.  The record before the Court indicates that Plaintiff received Notification of Confinement Report #B136020 on January 9, 2019. (Doc. No. 2 at 35.)  This report notified

Plaintiff that was being placed in the RHU pending further review pursuant to DC-ADM 802. (*Id.*) On January 10, 2020, the PRC reviewed Plaintiff's placement and decided to continue his administrative custody status "pending Security report." (Doc. No. 18-1 at 80.) The record, however, reflects that Plaintiff never filed an appeal of the PRC's decision pursuant to DC-ADM 802. Accordingly, because Plaintiff did not exhaust his claim regarding his placement in administrative custody, the Court will grant Defendants' motion to dismiss (Doc. No. 13), construed as a motion for summary judgment on the issue of administrative exhaustion, on this basis with respect to Plaintiff's Eighth Amendment claim.

### 2.     First Amendment Retaliation Claims

As noted *supra*, the Court has concluded that Plaintiff's complaint sets forth plausible First Amendment retaliation claims to survive dismissal pursuant to Rule 12(b)(6). Defendants, however, argue further that Plaintiff never exhausted his administrative remedies with respect to these claims. (Doc. No. 14 at 12-13.) For the reasons set forth below, the Court agrees with Defendants.

"Under the PLRA, prison conditions include retaliation . . . claims." *Presbury v. Dohman*, No. 16-4949, 2019 WL 6218399, at *1 n.1 (E.D. Pa. Feb. 15, 2019). Plaintiff's retaliation claims, therefore, are covered by the administrative grievance

process set forth in DC-ADM 804.[6]  *See id.*  The record reflects that Plaintiff filed

two (2) grievances pursuant to DC-ADM 804 related to the events set forth in his

complaint.  In grievance number 791521, Plaintiff asserted a due process violation

based upon the dismissal of his final appeal of his misconduct.  (Doc. No. 14-1 at

30.)  Plaintiff's grievance was dismissed at the initial level because it raised issues

that should be handled pursuant to DC-ADM 801.  (*Id.* at 31.)  Plaintiff completed

an appeal of this grievance to the Facility Manager (*id.* at 32); however, his appeal

was never sent (Doc. No. 18 ¶ 60).  In grievance number 806095, Plaintiff requested

a refund of $104.68 for commissary items that were not transferred with him to SCI

Coal Township.  (Doc. No. 14-1 at 34.)  His grievance was dismissed on June 11,

2019 as untimely.  (*Id.* at 35.)  Plaintiff, however, never asserted that he was

retaliated against for using the procedures set forth in DC-ADM 801 by way of

having his property destroyed and being transferred to another institution.

Moreover, Plaintiff never raised any retaliation issues in his appeals pursuant to DC-

---

[6] The Third Circuit recently recognized that "there is a serious question whether . . . DC-ADM-801 and DC-ADM-804 are available to prisoners as a method to grieve retaliation claims."  *See Grisby v. McBeth*, 810 F. App'x 136, 138 n.1 (3d Cir. 2020).  At issue in *Grisby* was the plaintiff's claim that he received a misconduct in retaliation for threatening to report an officer for "rudely den[ying] him a vegetarian meal.  *Id.* at 137.  The Third Circuit noted "uncertainty regarding the interpretation of DC-ADM-801 and DC-ADM-804 and their interaction, if any, when it comes to retaliation claims."  *Id.* at 138 n.1.  In the instant case, the Court concludes that it is not necessary to addressing this issue because, as discussed *infra*, the record reflects that Plaintiff never asserted his claims of retaliation in either his grievances filed pursuant to DC-ADM 804 or his misconduct appeals filed pursuant to DC-ADM-801.

ADM 801.  Accordingly, because Plaintiff did not properly exhaust his retaliation claims, the Court will grant Defendants' motion to dismiss (Doc. No. 13), construed as a motion for summary judgment on the issue of administrative exhaustion, on this basis with respect to Plaintiff's First Amendment claims.

### 3.    Fourteenth Amendment Due Process Claims

As noted *supra*, the Court concluded above that Plaintiff has set forth plausible Fourteenth Amendment due process claims against Defendants Gardzalla and McKeown.  Defendants further assert that Plaintiff failed to properly exhaust his administrative remedies with respect to his due process claims.  Defendants raise the following three (3) arguments: (1) Plaintiff's appeal to the PRC "challenged only one issue: the validity of the 'Waiver of Disciplinary Procedures Form'"; (2) Plaintiff's appeal to Defendant Mahally failed to comply with DC-ADM 801; and (3) his final appeal to Defendant Moslak failed to comply with DC-ADM 801.  (Doc. No. 17 at 8-9.)

The principal purposes of the prison grievance system is "notify[ing] officials of a problem and provid[ing] an opportunity for efficient correction."  *Small v. Camden Cty.*, 728 F.3d 265, 272 (3d Cir. 2013).  From the record before it, the Court concludes that, under the circumstances, Plaintiff "'substantially complied' with [DC-ADM 801] such that [his due process claims against Defendants Gardzalla and

McKeown] were exhausted." *See Sears v. McCoy*, --- F. App'x ----, 2020 WL 3830921, at *3 (3d Cir. July 8, 2020).  While Defendants are correct that Plaintiff's appeal to the PRC concerned only the Waiver of Disciplinary Procedures Form and that Plaintiff attempted to submit a second appeal to the PCR, the fact remains that Plaintiff's second appeal, which raised his concerns about the informant's reliability, was treated as his appeal to the Facility Manager.  (Doc. No. 14-1 at 17-20.) Defendants further fault Plaintiff for not raising any challenge to the procedures employed during the hearing.  (Doc. No. 17 at 9.)  However, while Defendant Mahally noted that Plaintiff was "presenting [his] case again as [he] did with the Hearing Examiner," he continued further and concluded that none of the "procedures employed were contrary to law, Department directives, or regulations" and that sufficient evidence supported Defendant McKeown's findings.  (Doc. No. 14-1 at 20.)

Defendants also assert that Plaintiff's final appeal to Defendant Moslak failed to comply with DC-ADM 801.  Specifically, Defendants assert that Plaintiff's final appeal was late and that it was not brief because it was "twenty (20) pages in total length."  (Doc. No. 17 at 9.)  Defendants maintain that despite these defects, Defendant Moslak "granted Plaintiff three separate extensions of time and

opportunities to perfect his final level appeal," and that Plaintiff "simply refused to take those opportunities by providing the requisite information." (*Id.*)

The Court does not find Defendants' arguments to be persuasive. As noted above, the final appeal to the Chief Hearing Examiner must include "photocopies of the Misconduct Report, Hearing Examiner's Report, the Inmate Version and Witness forms, Appeal to the PRC, the PRC's Response, Appeal to the Facility Manager, and the Facility Manager/designee's response." (Doc. No. 18, Ex. D.) Moreover, the final appeal must include "a brief statement of the facts relevant to the appeal and issues complained of on appeal by using the DC-141, Part 2(E)." (*Id.*) DC-ADM 801, however, does not define what constitutes a "brief statement." From the exhibits, it appears that while Plaintiff's final appeal totaled twenty (20) pages in length, all but seven (7) of those pages were the requisite documentation set forth above. Plaintiff's seven (7) page statement could certainly qualify as a "brief statement" setting forth the facts and issues relevant to his appeal. Plaintiff's final appeal submission, therefore, served to "notify [Defendant Moslak] of a problem and provid[ed] an opportunity for efficient correction." *Small*, 728 F.3d at 272. Moreover, while Plaintiff never responded to Defendant Moslak's response dated April 11, 2019, the record indicates that the response was mailed to Plaintiff at SCI Dallas. (Doc. No. 22-1 at 25.) However, the record reflects that Plaintiff's last day

44

at SCI Dallas was April 9, 2019, two (2) days prior to when Defendant Moslak's response was mailed. (Doc. No. 18 ¶ 4.) Defendants, therefore, cannot fault Plaintiff for "refus[ing] to take . . . opportunities [to perfect his final appeal] by providing the requisite information" when Plaintiff provided the requisite information at the outset and the record does not indicate whether Plaintiff ever received Defendant Moslak's final communication.

In sum, the Court concludes that Plaintiff substantially complied with DC-ADM 801 such that he is deemed to have exhausted his administrative remedies with respect to his Fourteenth Amendment due process claims against Defendants Gardzalla and McKeown. The Court, therefore, will deny Defendants' motion to dismiss (Doc. No. 13), construed as a motion for summary judgment, with respect to these claims.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for a continuance (Doc. No. 20) will be denied.  Defendants' motion to dismiss (Doc. No. 13), construed as a motion for summary judgment on the issue of administrative exhaustion, will be granted in part and denied in part.  The motion will be granted with respect to all claims except for Plaintiff's Fourteenth Amendment due process claims against Defendants Gardzalla and McKeown.  An appropriate Order follows.

<u>s/ Sylvia H. Rambo</u>
United States District Judge

Date: August 6, 2020